### 19911

Jessie B. SCOTT, and Scott's Motel, Inc., Respondents, v. Kenton A. LITTLE and John Lake, Jr., of whom Kenton A. Little is Appellant.

(210 S. E. (2d) 132)

*Messrs. Jefferies & Wise,* of Greenwood, *for Appellant,*

*Messrs. Watson & Ayers,* of Greenwood, *for Respondent,*

November 25, 1974.

BUSSEY, Justice:

In this action to recover damages for breach of an alleged contract the plaintiffs obtained a verdict against both defendants for the sum of $10,000. The defendant Lake was in default and only the defendant Little appeals.

Little's first contention is that he was entitled to a nonsuit, directed verdict and/or judgment *n. o. v.* on the ground that no contract existed between the parties. It is elementary, and requires no citation of authority, that in considering whether Little was entitled to a directed verdict or judgment *n. o. v.,* for failure of proof, the evidence and all of the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiffs and we proceed to review the evidence and state the facts and inferences reasonably gleaned therefrom in the light of this most salutary principle.

The plaintiff, Jessie B. Scott, is the sole stockholder of the corporate plaintiff Scott's Motel, Inc. The plaintiffs owned a motel property near Greenwood, South Carolina; the title to the real estate being in the name of the corporate plaintiff and the fixtures therein being owned by the individual plaintiff. During the months of October-November, 1972 the plaintiffs were preparing to auction off this property, the auction being scheduled for December 9, 1972. One Curtis Cunningham, an auctioneer, had been engaged by the plaintiffs to conduct the auction.

During the month of November the defendant Little and his retained attorney, the defendant Lake, entered into negotiations with Cunningham to purchase from the plaintiffs the said motel property in a direct sale. Several meetings were held and on November 29, 1972, Little, Lake and Cunningham orally agreed upon a price of $85,000, with a down payment of $10,000, all subject to the approval of the plaintiff Mrs. Jessie B. Scott. Cunningham specified that he must have something in writing to present to Mrs. Scott, so

on November 30, Lake wrote to Cunningham the following letter: "As per our telephone conversation of Wednesday, November 29, 1972, I hereby submit an offer on behalf of Mr. Kenton A. Little for the Scott's property and equipment in the amount of Eighty-five Thousand Dollars. Please advise me of your decision at your earliest convenience." The letter was signed by the defendant Lake and on the bottom the defendant Little signed his approval in these words: "I hereby approve the above listed offer." The letter was handed to Cunningham by Lake who took the same directly to Mrs. Scott's attorney who approved it and then took it to Mrs. Scott, who accepted, she telling Cunningham to "go right ahead." Cunningham promptly returned to Lake and told him the offer was accepted and that everything was all right, but that Mrs. Scott would need the orally agreed upon $10,000 down payment immediately.

While the letter made no mention of how or when the purchase price would be paid, it was Cunningham's testimony that the parties had previously orally agreed upon the $10,000 down payment with the balance of the purchase price to be paid on April 1, 1973. Lake did not testify and Little did not directly contradict Cunningham's version of how the purchase price was agreed to be paid. When the agreement was finalized by Mrs. Scott's acceptance on November 30, Little agreed to come up with the agreed $10,-000 down payment on the third day thereafter but failed to keep his promise as well as subsequent promises to make the down payment at specified times.

The plaintiffs considering that they had a firm contract with Little cancelled the auction scheduled for December 9, but when Little did not come up with the down payment, the property was again advertised for auction and sold on December 30, 1972 for the sum of $71,000. On December 28, by a letter addressed to Little and delivered to his attorney, the defendant Lake, Little was notified that plaintiffs would proceed with the auction on December 30, but would hold him responsible for any loss suffered by his failure to

live up to his contract. The letter was confirmatory of prior oral communications to the defendant Little. The plaintiffs allegedly incurred additional expenses in connection with the auction of December 30 in the amount of $800, and via their complaint they sought to recover the sum of $14,800, which, of course, embodied the difference between the contract price and the auction sale price, plus auction expense.

The principal contention of the defendant Little is that there was no contract, because the plaintiffs insistence that the $10,000 down payment be promptly made constituted a counter-offer rather than an unqualified acceptance of his offer, which written offer did not specify just when or how he would pay the purchase price. This contention is, we think, clearly without merit. The evidence is to the effect that the $10,000 down payment was orally agreed upon by Cunningham and the defendants prior to the written offer being tendered and the plaintiffs insistence that such be promptly paid, was only part and parcel of their acceptance of Little's offer, and not a counter-offer. The evidence clearly supports the inference that Little entered into a contract, but not being able to arrange his finances satisfactorily to himself elected not to comply with the contract.

Little next contends that the court erred in failing to charge the jury that separate verdicts would have to be returned for each of the plaintiffs as their respective damages were made to appear since one owned the real property and one owned the personal property. No effort was made in the course of the trial, by any of the parties, to separate the damages sustained by the corporate plaintiff from those sustained by the individual plaintiff, and under these circumstance there would have been no way in which the jury could have separated such and given separate verdicts therefor. But, in any event Little fails to show wherein he has suffered any prejudice. Certainly the individual plaintiff should encounter no difficulty in dividing the verdict between herself and the corporate entity of which she is the sole owner. Should she perceivably encounter any such difficulty, it is of no concern to Little.

Finally, Little complains that the verdict of $10,000 should have been set aside as contrary to the evidence and contrary to the instructions of the court. Otherwise stated, Little argues that the plaintiffs should have recovered the total amount sued for, to wit: $14,800, or nothing. It cannot be said with any certainty that the verdict was contrary to the instructions of the court. At one point the court charged the measure of damage to be the difference between what would have been received under the contract and what plaintiffs did in fact receive, but at another point he instructed them that the damages "may be" measured by the difference, plus costs. He also instructed the jury that the maximum amount which could be returned was the prayer of the complaint and that the only controlling feature of the amount asked for was that the jury could not go beyond that amount.

While it is arguable that the verdict is contrary to the evidence, the issue of damages was to some extent confused by evidence offered to the effect that the property was not worth $85,000, the contract price. Additionally, plaintiffs apparently received the proceeds of the auction sale on December 30, 1972 and had the contract been complied with payment would not have been completed by Little until some three months later. Interest, taxes and other factors could make a difference between receiving payment at one date or another and have bearing on the amount of damages sustained.

But aside from these considerations, it is a general rule of law that the inadequacy of the amount of damages awarded by a jury verdict does not entitle the party-litigant, against whom the verdict was rendered, to a new trial. See 15 Am. Jur. (2d) 363, New Trial, section 156, from which we quote:

"The inadequacy of the amount of damages awarded by a verdict of the jury does not, as a general rule, entitle the party litigant against whom the verdict was rendered to a

new trial, although the inadequacy may be so great as to furnish good ground for new trial at the instance of the party in whose favor the verdict was returned. One cannot secure a new trial upon the ground that his opponent ought to have recovered either a greater amount or nothing."

The decisions of this Court are in full accord with the above stated general rule. See cases collected in West's South Carolina Digest, Appeal and Error, Key No. 1033(9).

We are of the view that all of appellant's exceptions are without merit and the judgment below is accordingly.

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.